**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE FELTY, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 1:13-cv-02818 |
| vs. ) | Judge Kocoras |
| ) | |
| DRIVER SOLUTIONS, LLC, et al.; ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**INTRODUCTION**

Several related vocational schools headquartered in Indianapolis conduct entry-level commercial truck driver ("CDL") training courses at locations throughout the United States. With the assistance of a collection agency and two collection lawyers, they file thousands of lawsuits to collect debts for tuition and student housing. All of the lawsuits are filed in small claims court in Marion County (Indianapolis), Indiana, even though most of the students neither signed contracts in Indianapolis nor resided there when the lawsuits were filed. This is a flagrant violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692i ("FDCPA"), and state consumer protection laws. Section 1692i requires that a legal action by a debt collector on a consumer contract be brought "only in the judicial district or similar legal entity . . . (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action."

In order to evade §1692i, defendants recite in their form contracts that the tuition and student housing debts are "business debts." Their motion to dismiss asserts that these recitals must be taken at face value. Defendants' characterization of the transactions is totally frivolous.

The Seventh Circuit, several other Courts of Appeal, and numerous other courts hold that educational debts are personal-purpose debts subject to the FDCPA. *Williams v. OSI Educational Services, Inc.,* 505 F.3d 675, 678 (7th Cir. 2007); *Easterling v. Collecto, Inc.*, 692 F.3d 229 (2nd Cir. 2012); *Peter v. GC Services, LP*, 310 F.3d 344 (5th Cir. 2002); *Rowe v. Educational Credit Mgmt. Corp.,* 559 F.3d 1028 (9th Cir. 2009); *Juras v. Aman Collection Service, Inc.*, 829 F.2d 739 (9th Cir. 1987); *Cliff v. Payco Gen. Am. Credits, Inc*., 363 F.3d 1113, 1123-24 (11th Cir. 2004). Defendants' motion fails to disclose any of these decisions, and indeed does not cite a single case holding that educational debts can be characterized as business debts. Furthermore, it is clear that debtors cannot waive their rights under 15 U.S.C. §1692i or the other statutes relied upon.

Defendants also claim that plaintiffs' state law claims are barred by res judicata or the Rooker-Feldman doctrine. These arguments are also incorrect. The state small claims court clearly lacked personal jurisdiction over plaintiffs, and the statutory violations and torts

1

complained of in this action were complete upon filing in the improper forum.

I. **FACTS**

Plaintiffs Felty, Butler, Fitch, and Phillips are residents of Illinois. (2AC, ¶7-9, 11) Plaintiff MacNees is a resident of Wisconsin. (2AC, ¶10) Plaintiff Dugger is a resident of Ohio. (2AC, ¶12) At no time relevant to this action did any of the plaintiffs reside in Marion County (Indianapolis), Indiana. (2AC, ¶13)

Defendants Driver Solutions, LLC ("DS") and C&S Acquisition, d/b/a C1 Professional Training Center ("C1") are Indiana entities with offices in Indianapolis and common officers. (2AC, ¶14, 22) They advertise that they provide free CDL training for persons without prior truck driving experience (2AC, ¶15-16, 23).

Defendants C1 Truck Driver Training, LLC ("C1TDT") is an Indiana entity with offices in Indianapolis. (2AC, ¶26) It is involved in the advertising and provision of CDL training to plaintiffs and class members. (2AC, ¶27) Its web site links to that of DS and states that "We've partnered with Driver Solutions to provide the best sponsored CDL training opportunities." (http://www.c1training.com) (2AC, ¶28-9)

In fact, plaintiffs and other students are required to sign notes payable to DS or C1 for the full amount of tuition and related expenses, which note promises forgiveness of the debt if the student is employed as a truck driver for one year, so that the trucking company pays the debt. (2AC, ¶17, 18, 24 and Exs. A-D)

Thousands of students – a large proportion of those attending – do not successfully complete the course or the year's employment. (2AC, ¶19) The contract does not require that the student be at fault in not completing the course or the year's employment. (2AC, ¶20)

All of the students that do not successfully complete the course or the year's employment are sued on the notes in small claims courts in Marion County, even if they do not reside in Marion County and did not sign any contract there, as was the case with plaintiffs. (2AC, ¶¶21, 49-114) Over 500 such lawsuits were filed. (2AC, ¶128) The amount sought in each case was $6,000 or less (an Indiana small claims case can seek not more than $6,000). Both DS and C1 engage in these practices, and in fact DS files lawsuits on contracts entered into by C1. (2AC,

2

¶25)

Defendant Pyramid Financial Solutions, LLC ("PFS") is an Indiana entity with offices in Indianapolis. Its officers overlap with those of DS. (2AC, ¶20-31) PFS provides collection services, including the use of its corporate counsel Lowe to file lawsuits, to DS and C1. (2AC, ¶32) It describes itself as a "sister company" to DS. (2AC, ¶34) It is debt collector subject to the FDCPA. (2AC, ¶31-37)

Defendants Garrett J. Lowe and Brian K. Alsip are collection lawyers who regularly file the collection cases. (2AC, ¶41-42, 44-45) Lowe is or was corporate counsel for PFS (2AC, ¶39-40) and Alsip gets cases from PFS. (2AC, ¶46) Each is a debt collector as defined in the FDCPA. (2AC, ¶42-43, 47-8)

Each plaintiff was sued by DS in Marion County to collect a tuition debt. (2AC, ¶49-109) Plaintiffs Fitch and Dugger were sued by DS even though they contracted with C1. (2AC, ¶67, 103) One of the attorney defendants, Alsip and Lowe, filed each suit. (2AC, ¶49-109) Lowe filed suit as corporate counsel for PFS. (2AC, ¶50, 59, 70, 82)

Plaintiffs Fitch, MacNees, Phillips and Dugger were subject to postjudgment collection proceedings in Marion County. Conducting the proceedings in Marion County deprived these plaintiffs of the more generous exemptions in the states where they resided. (2AC, ¶75-80, 90-92, 100, 109) In addition, some Indiana exemptions turn on fact determinations, require action by the debtor, or require exercise of discretion by the Court, so that enforcing a judgment in Indiana instead of where the consumer resides effectively deprives the consumer of any opportunity to raise such matters. (2AC, ¶80)

In order to cover up the improper filings, defendants purport to document the loans as business transactions, using materially identical paperwork. (2AC, ¶115) In fact, the debts are for vocational school tuition, and are similar to any other educational debts, which are consumer transactions even though the intended result of the education is to equip the student to earn a living in a new trade or business. The attempted characterization of the debts as business expenses is a sham and a fraud. (2AC, ¶116-17)

Each loan agreement purports to provide for venue in Marion County. (2AC, ¶118)

3

These provisions are invalid under Indiana law. (2AC, ¶119) Ind. Code § 24-4.5-1-201(6)(c) provides that a provision fixing venue in a consumer contract is invalid.

In this action, plaintiffs allege that the filing of collection suits and postjudgment collection proceedings in Marion County against persons who neither resided in Marion County when the suits were filed nor signed contracts in Marion County violated 15 U.S.C. §1692i. All plaintiffs also assert claims for abuse of process, consisting of intentionally filing lawsuits in an improper and distant venue (Count III), and under the Indiana Deceptive Consumer Sales Act. (Count IV) The Illinois plaintiffs sue under the Illinois Consumer Fraud Act (Count II), and the Ohio plaintiff under the Ohio Consumer Sales Practices Act. (Count V)

Plaintiffs are not seeking to vacate any judgments. Plaintiffs are seeking statutory damages, actual damages not to include any amounts collected pursuant to a judgment, an injunction requiring all further legal proceedings to be in the county where the student resides or signed a contract, and attorney fees. (2AC, Counts I-V).

## II. EDUCATIONAL DEBTS, INCLUDING THOSE FOR VOCATIONAL TRAINING, ARE PERSONAL-PURPOSE "DEBTS" SUBJECT TO THE FDCPA AND OTHER CONSUMER PROTECTION LAWS.

The Seventh Circuit and at least four other Courts of Appeal have held that educational debts are covered by the FDCPA. *Williams v. OSI Educational Services, Inc.,* 505 F.3d 675, 678 (7th Cir. 2007) (debt owed to Great Lakes Higher Education Guaranty Corporation is "debt incurred for personal, family or household purposes"); *Easterling v. Collecto, Inc.*, 692 F.3d 229 (2nd Cir. 2012) (misrepresentation concerning dischargeability of student loans in bankruptcy); *Peter v. GC Services, LP*, 310 F.3d 344 (5th Cir. 2002); *Rowe v. Educational Credit Mgmt. Corp.,* 559 F.3d 1028 (9th Cir. 2009); *Juras v. Aman Collection Service, Inc.*, 829 F.2d 739 (9th Cir. 1987); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1123-24 (11th Cir. 2004) (law school tuition; "third-party debt collectors acting on behalf of guaranty agencies to collect federal student loans must comply with the FDCPA").

*Smith v. Progressive Finan. Svcs., Inc.*, No. 6:12-cv-1704, 2013 WL 3995004 (D. Ore. Aug. 1, 2013), very recently held that a debt for commercial pilot training is a consumer debt:

[P]laintiff's purpose in obtaining her loan was to finance her education at Falcon Aviation

4

Academy. Defendant argues that an educational loan is akin to venture capital. Venture capital is "money made available for investment in innovative enterprises or research, especially in high technology, in which both the risk of loss and the potential for profit may be considerable." [citation] Contrary to defendant's argument, "education" encompasses something broader than mere investment in pursuit of profit. *Brown v. Bd. of Ed. Of Topeka, Shawnee Cnty, Kan.*, 347 U.S. 483, 493 (1954) (". . . our recognition of the importance of education to our democratic society. . . . It is the very foundation of good citizenship."); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923) ("The American people have always regarded education and acquisition of knowledge as matters of supreme importance which should be diligently promoted."). Education, unlike venture capital, cannot be taken by creditors upon default and remains with the consumer throughout his or her life; any skill or knowledge acquired by plaintiff is hers and hers alone. In contrast, if plaintiff invested her loan in a business and then defaulted, defendant would be provided with ample opportunities to reach such an interest. These factors, when viewed "as a whole," indicate that plaintiff's educational services were primarily for personal purposes. Thus, plaintiff's student loan is "debt" subject to the FDCPA. See, e.g., *Brumberger v. Sallie Mae Servicing Corp.*, No. Civ.A. 02-2909, 2003 WL 1733548, at *3 (E.D. La. Mar. 28, 2003); *Skerry v. Massachusetts Higher Educ. Assistance Corp.*, 73 F.Supp.2d 47, 51 (D. Mass. 1999); *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1166 (N.D. Al. 1999); *Carrigan*, 494 F.Supp. at 826.

Numerous other courts have likewise held that educational debts are covered by the FDCPA. *Carrigan v. Central Adjustment Bureau, Inc.,* 494 F.Supp. 824, 826 (N.D.Ga. 1980) ("A 'debt' so defined is clearly involved in the present case. Plaintiff, while a student, incurred an indebtedness to the University of Florida in the form of a federal loan for tuition. As a student, Plaintiff acted as a 'consumer' of educational services in securing an obligation to pay money arising out of a transaction in which the subject thereof was a 'service,' education, intended for Plaintiff's 'personal' use."); *Patzka v. Viterbo College*, 917 F.Supp. 654 (W.D.Wisc. 1996) (debt for "for tuition, books, housing and meals" covered by both FDCPA and Wisconsin Consumer Act); *Pelfrey v. Educational Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1166 (N.D.Ala. 1999) ("Student loans such as that obtained by Pelfrey fall under the FDCPA's definition of 'debt.'"); *Romano v. Williams & Fudge, Inc.*, 644 F.Supp.2d 653 (W.D.Pa. 2008) (tuition owed university); *Padilla v. Payco General American Credits, Inc.*, 161 F.Supp.2d 264 (S.D.N.Y. 2001) ("student loans Padilla used to finance her college and law school education").[1]

---

[1] *Accord, Coppola v. Connecticut Student Loan Found.,* Civ. A. N-87-398 (J2AC), 1989 WL 47419, 1989 U.S. Dist. LEXIS 3415 (D.Conn. March 22, 1989); *Linsley v. FMS Investment Corp.,* 288 F.R.D. 11 (D.Conn. 2013); *Donohue v. Regional Adjustment Bureau*, 12-1450, 2013 WL 607853 (E.D.Pa., Feb. 19, 2003); *Knight v. Schulman*, 102 F.Supp.2d 867 (S.D.Ohio. 1999); *Ellis v. General Revenue Corp.*, 274 F.R.D. 53 (D.Conn. 2011); *Moss v. Premiere Credit of North America, LLC*, CV411-123, 2012 WL 5416928 (S.D.Ga., Sept. 26, 2012); *Capital Credit*

Educational debts are also covered by state consumer protection laws that are limited to consumer-purpose transactions. *Knight v. Schulman,* 102 F.Supp.2d 867, 877 (S.D.Ohio. 1999). There is no exception for debts resulting from education for a particular trade or vocation. *Smith v. Progressive Financial Services, Inc., supra; McComas v. Financial Collection Agencies, Inc.*, Civ. A. 2:96-0431, 1997 WL 118417 (S.D.W.Va. March 7, 1997) (tuition for "Professional Office Assistant Program"); *Malone v. Academy of Court Reporting*, 64 Ohio App.3d 588, 594, 582 N.E.2d 54 (1990) (paralegal school); *Matulin v. Academy of Court Reporting*, No. 14947, 1992 WL 74210 (Ohio App., April 8, 1992) (same); *Rude v. Nuco Education Corp.*, No. 25549, 2011 WL 6931516 (Dec. 30, 2011) (nursing school); *Cliff v. Payco Gen. Am. Credits, Inc.*, *supra*, 363 F.3d 1113, 1123-24 (11th Cir. 2004) (law school). Indeed, private trade schools are notoriously abusive.

The Federal Trade Commission ("FTC") Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988), states that educational debts are covered:

> Section 803(5) defines "debt" as a consumer's "obligation . . . to pay money arising out of a transaction in which the money, arising out of a transportation in which the money, property, insurance, or services (being purchased) are primarily for personal, family, or household purposes. . . ."
>
> 1. Examples. The term includes: . . . A student loan, because the consumer is purchasing "services" (education) for personal use. . . .

Without disclosing adverse controlling authority to the Court, defendants assert that debts incurred in connection with their vocational training courses are "business debts" not covered by the FDCPA and other statutes sued upon. Then, defendants cite (Def.Mem., pp. 11-13) not less than 8 cases – ***not one of which involved a educational debt*** – for the uncontested proposition that the FDCPA and some of the other statutes relied upon by plaintiffs only apply to personal-purpose debts. ***Defendants cite no case supporting the notion that a educational debt is not a personal-purpose debt within the FDCPA or other consumer protection laws.***

---

*& Coll. Svc., Inc. v. Armani*, 227 Or. App. 574, 206 P.3d 1114 (2009).

Defendants also claim that because they sought to place graduates with employers, the debts became "business debts." However, the actual amounts claimed by defendants when they sued in Marion County were overwhelmingly for "tuition" and "student housing"; there were *no* charges for job placement or "career management." (2AC, ¶49-109) Furthermore, virtually all vocational schools, colleges and universities have placement programs, and they typically claim that the vast majority of students are placed. E.g., The Completion Arch: Measuring Community College Student Success, http://completionarchcollegeboard.org/preparation/ job-pl2A Cement-rates /employment-outcomes-il (percentage of Illinois Community College program completers employed in the first or second quarter following program completion is 70-80%). If *that* makes an educational debt into a business debt, all educational debts are "business debts," contrary to the authorities.

Significantly, the Internal Revenue Code would not permit deduction of the debts at issue as a "business expense." 26 C.F.R. §1.162-5 provides that the costs of the "minimum education necessary to qualify for a position or other trade or business" are personal expenses and may never be deducted. Obviously, the minimum qualification for the occupation of commercial truck driver is a CDL, and a CDL training course is the "minimum education necessary to qualify". The cost of training for a new occupation, such as commercial truck driver, in which a person is not presently engaged is never a "business expense." *Holmes v. C.I.R.*, 66 T.C.M. (CCH) 516 (T.C. 1993) ("educational expenditures are nondeductible if they are made for education which is part of a program of study which will lead to qualifying the taxpayer for a new trade or business").

### III. FDCPA RIGHTS CANNOT BE WAIVED BY RECITALS IN A FORM CONTRACT

Unable to cite any case holding that educational debts are outside the FDCPA, defendants point to recitals in their own form contracts that the debts they sought to collect are "business debts." Defendants thus contend that a consumer can be forced to waive the protections of the FDCPA or other consumer protection laws by the inclusion of recitals in a contract of adhesion characterizing what the law says is a personal-purpose debt as a business debt.

Defendants' position is meritless. A "business debt" recital in a form drafted by a creditor must be disregarded when the actual disbursement of funds is for a purpose the law considers to be personal. "It is well-established that an affidavit stating that a loan is for a business purpose is not legally conclusive as to the purpose of that loan." *In re Dawson*, 411 B.R. 1, 37 (Bank. D.D.C. 2008). *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 715-16 (Me. 1993) (court found a consumer loan even though the loan application was labeled commercial because actual use of proceeds was for residence and bank knew it). Most of the decisions involve the Truth in Lending Act, but the test for "personal, family or household purpose" is the same under the FDCPA and TILA. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000).

Here, each of the debts was for the basic training necessary to qualify the debtor for the occupation of commercial truck driver, a CDL license, along with housing expense and fees associated with taking the course. That is a personal-purpose debt covered by the FDCPA, not a business debt.

Defendants' recitals characterizing as a business debt that which is, actually, a personal debt, is nothing more than an attempt to secure a waiver of the debtor's rights under consumer protection laws. Rights under the FDCPA cannot be waived through such recitals, or any other means not provided for in the FDCPA itself. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171, fn. 5 (9th Cir. 2006) ("Out of an abundance of caution, we further note what should be obvious: a consumer's consent cannot waive protection from the practices the FDCPA seeks to eliminate, such as false, misleading, harassing or abusive communications. Permitting such a waiver would violate the public policy goals pursued by the FDCPA."); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F.Supp.2d 1006 (N.D.Ill. 2006) (provision in contract cannot waive TILA rights).

Significantly, other sections of the FDCPA specifically provide for waiver.[2] Congress knew how to authorize a waiver when it so desired, but did not do so in §1692i. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Moral–Salazar v. Holder*, 708 F.3d 957, 961 (7th Cir. 2013). There is no basis to depart from the general rule that federal statutory rights intended to protect consumers and debtors against overreaching cannot be waived in advance. *Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1181 (11th Cir.1982) (TILA); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704 (1945) (FLSA); *Taub v. World Financial Network Bank*, No. 12cv9113(CM), 2013 WL 3157496 (S.D.N.Y., June 21, 2013) (TILA).

The purported consents to venue in Marion County are also invalid under Indiana law. Ind. Code § 24-4.5-1-201(6)(c) provides that a provision fixing venue in a consumer contract is invalid. All of defendants' arguments based on the propriety of venue in Marion County are dependent on their fraudulent mischaracterization of the debts as business debts.[3]

Defendants finally argue that the exhibits containing "business" recitals attached to the complaint control. (Def.Mem., pp. 12-13) Defendants in effect argue that if a plaintiff attaches a document as an exhibit and alleges that it is false and fraudulent and why, the document must be taken as true and controls over any contrary allegations in the pleadings. If that were the case, fraud would be impossible to ever allege. As the Seventh Circuit made clear in *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004), a plaintiff who appends a document to a complaint "not in

---

[2] E.g., 15 U.S.C. §1692c(a) ("Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . ."); 15 U.S.C. §1692c(b) ("without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt . . . ").

[3] The Illinois Consumer Fraud Act also provides that "Any waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable," 815 ILCS 505/10c, and Ohio R.C. §1345.49 provides that "Any waiver by the buyer of the provisions of sections 1345.41 to 1345.50 of the Revised Code is contrary to public policy and is void."

order to vouch for the truth of the statements in it," but to allege fraud with specificity, show exhaustion of remedies, or some similar purpose, does not plead himself out of court. The Seventh Circuit in *Carroll* called the argument frivolous, "fantastic" and "beyond nonsensical."

**IV.      RES JUDICATA DOES NOT APPLY TO §1692i VIOLATIONS AND PARALLEL VIOLATIONS OF STATE LAW**

Defendants claim that "all counts, except the FDCPA claim" are barred by res judicata because the default judgments establish that venue was proper in Marion County. (Def.Mem., pp. 3-5)   They do not make the argument as to the §1692i claim because it is well settled that a §1692i claim is complete upon filing the improper lawsuit, and that the failure of the consumer to object to the improper filing does not eliminate the violation.  *Blakemore v. Pekay*, 895 F.Supp. 972  (N.D. Ill. 1995); *Oglesby v. Rotche,* 93 C 4183, 1993 WL 460841, 1993 U.S. Dist. LEXIS 15687 (N.D.Ill. 1993).  This is also the case with plaintiffs' state law claims (see below).

Defendants' argument fails because a judgment is not res judicata unless the court issuing it had jurisdiction over the person of the defendant. *Henderson v. American Steamship Owners Mut. Prot. & Indemn. Ass'n*, 2:11cv86, 2011 WL 2194439, *1 (D.Me. June 6, 2011) ("Without personal jurisdiction, there could be no res judicata effect"); *Gottschalk v. Borland*, 87-385, 1987 WL 19919, *2 (D.D.C. Nov. 3, 1987) ("If the court did in fact lack personal jurisdiction over the defendant, then the judgment is without effect, and the doctrine of res judicata would not apply"); *see Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 561-2 (7th Cir.1999).  Furthermore, unless personal jurisdiction is actually litigated in the court issuing the judgment, its absence may be raised when a party seeks to take advantage of the judgment.  *Zepp v. Hager*, 70 Ill. 223 (1873); *Ross & Chatterton Law Offices v. Lewis*, 109 Ill. App. 3d 856, 857, 441 N.E.2d 129, 130 (4th Dist. 1982); *Sackett Enterprises, Inc. v. Staren*, 211 Ill. App. 3d 997, 570 N.E.2d 702 (1st Dist. 1991);  *In re Marriage of Kramer*, 226 Ill. App. 3d 815, 589 N.E.2d 951 (4th Dist. 1992). Contrary to defendants' argument, a person who is sued in a court which lacks personal jurisdiction over him, in the sense of contacts between the forum and the person that comport with due process, "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of*

*Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 706 (1982); *accord*, *Philos Technologies, Inc., v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011). There is *no* obligation to "appeal[] or move[] to vacate any of the orders entered in the state court case" (Def.Mem., p. 6), because the imposition of such an obligation requires personal jurisdiction.

Finally, res judicata is not applied where it is fundamentally unfair to do so. *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind. Sup. Ct. 1988); *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (must have been "full and fair opportunity" to litigate).

Defendants admit that jurisdiction and venue were never actually litigated. (Def.Mem., p. 6) Most critically, although Def.Mem., p. 4 admits that defendants must show that the Indiana small claims court was one of "competent jurisdiction," defendants fail to explain how a court in Marion County, Indiana could possibly have personal jurisdiction over consumers who neither lived in Indiana nor signed any relevant contract there.

This includes all of the plaintiffs except Felty, who lived and took his CDL course in Allen County, Indiana but lived in Justice, Illinois when suit was filed. Marion County is about 130 miles from Allen County and 180 miles from Justice, Illinois. (Appendix A) The Illinois Supreme Court has held that filing suit on an educational debt under such circumstances deprives the student of his day in court and violates due process. *Williams v. Illinois State Scholarship Com'n*, 139 Ill.2d 24, 563 N.E.2d 465 (1990). An Illinois court would find the Marion County judgment against Felty to be void.

Defendants argue that "venue" in Marion County was proper because (1) payment was to be sent to Indiana, (2) the form agreements provide for Indiana law, (3) "Marion County is where the transaction actually took place and where the obligation was incurred," and (4) supposedly "plaintiffs were recruited 'in' Marion County, Indiana, via internet postings from servers in Indianapolis maintained by the Indianapolis, Indiana defendants (see SAC paras. 15-16, 289, citing defendants' website and attached as Exhibits 8-10 hereto). The plaintiffs applied on-line. (See websites cited in the SAC at paras. 15-16, 28 and Exhibits 8-10 hereto; they contain application links to apply on-line)." (Def.Mem., pp. 9-10)

11

"Facts" (3) and (4) contradict the complaint and are supported by nothing. Each plaintiff alleges that did not live in Marion County, did not take a course there, and did not sign a contract there. (2AC, ¶13, 56-7, 65, 73-4, 87-88, 97-8, 106-7) As pointed out in Plaintiffs' Objection to Defendants' Second Request for Judicial Notice, defendants cannot ask the Court to take judicial notice of self-serving statements on their own web sites. In any event, those statements do not show that "plaintiffs applied on-line" or dealt with a "Driver Agent" in Indiana. (Def.Mem., pp. 9, 10) The fact that it is *presently possible* to apply on-line does not mean that it was possible in *past years*, or that *plaintiffs* did that as opposed to call one of defendants' several locations (2AC, ¶¶74, 98 (Missouri), 88 (Arkansas), 107 (Ohio)). Nothing in Def. Ex. 9 shows that the "Driver Agent" is in Marion County. If defendants wished to prove how or where contact was established with a particular student, they were obligated to submit competent evidence; they did not and waived the point.

"Facts" (1) and (2) also do not create personal jurisdiction. That a creditor directs that payment be sent by a consumer to the creditor's home state, or provides that the law of its home state governs, does not allow the creditor to sue the consumer in the creditor's home state.

Courts have repeatedly held that such suits violate minimum standards of fairness and due process. *Yu v. Signet Bank*, 69 Cal.App.4th 1377, 82 Cal.Rptr.2d 304 (1999) (Virginia bank cannot obtain valid judgments against California credit card holders in Virginia, even though agreements specified Virginia law, application was sent to Virginia and payments were sent to Virginia); *Signet Bank/Virginia v. Tillis*, 196 Ga.App. 433, 396 S.E.2d 54 (1990) (same; "a contract with an out-of-state party does not alone automatically confer jurisdiction on the other party's home forum. . . . jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent"); *Spiegel, Inc. v. FTC*, 540 F.2d 287 (7th Cir. 1976) (retail business that sued non-Illinois consumers for delinquent credit accounts in Chicago guilty of unfair practice in violation of FTC Act §5); *Schubach v. Household Finance Corp.*, 375 Mass. 133, 376 N.E.2d 140 (1978) (under Massachusetts unfair practices statute, "the practice of filing collection suits in locations inconvenient to debtors, for the purpose of precipitating default

judgments, making defense of the actions more difficult, and securing judgments more favorable to HFC than would otherwise be the case" was "unfair"); *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 104, 496 P.2d 817, 101 Cal.Rptr. 745 (1972); *Santiago v. S. S. Kresge Co.,* 1976 Ohio Misc. LEXIS 64, 2 Ohio Op.3d 54 (Ohio C.P. 1976) (retailer which filed suit in county 250 miles from consumer's residence and where consumers had not physically engaged in any transaction with defendant where suit filed guilty of unconscionable sales practices); *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260 (1984) (similar); *Murphy-Jones v. Chase Bank USA, N.A.*, 2007 MR 197 (Sangamon Co. Cir. Ct. 2007) (Chase obtained void judgments and violated Consumer Fraud Act by filing collection suits, through in-house counsel, in Cook County against consumers residing in central and southern Illinois) (Appendix B).

Defendants' further claim that if a consumer transacts business through a web site, a court in the place where the web site is hosted (something the consumer has no way of knowing) or the site owner is located can exercise jurisdiction over a consumer residing in another state is, under the rules relating to personal jurisdiction based on web sites, *George S. May Intern. Co. v. Xcentric Ventures, LLC*, 409 F.Supp.2d 1052 (N.D.Ill. 2006), beyond frivolous. There are many national chains of vocational schools that have web sites; for such a school can file suit at its national headquarters against students who lived and attended classes anywhere in the U.S. is patently violative of due process.

Personal jurisdiction was absent and defendants' res judicata claim is therefore meritless.

## V. ROOKER-FELDMAN DOES NOT BAR A CLAIM FOR A TORT COMPLETE UPON THE IMPROPER FILING OF A LAWSUIT

Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005), the Rooker-Feldman doctrine only applies where the injury for which redress is sought is caused by a state court judgment entered before a federal case is filed.[4]

---

[4] The Seventh Circuit has assumed that Rooker-Feldman applies to FDCPA claims. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008). However, the statutory basis for the doctrine is the word "original" in 28 U.S.C. §1331 and 1332. *Exxon*, 544 U.S. at 283. That word does not appear in the special jurisdictional provision in the FDCPA, 15 U.S.C. §1692k(d).

A claim for statutory damages which arises upon the *filing* of an improper collection lawsuit, regardless of its outcome, or which is based on improper collection practices committed prior to judgment, cannot be barred by Rooker-Feldman. *Cotton v. Asset Acceptance*, 07 C 5005 (N.D.Ill., Feb. 25, 2008) (Appendix C). Rooker-Feldman simply does not apply where the asserted violations were "independent of and complete prior to the entry" of the state order. *Long v. Shorebank Dev. Corp.*, *supra,* 182 F.3d at 556; *Exxon, supra.*

Defendants effectively concede this by not moving to dismiss plaintiffs' §1692i claim on this ground. The §1692i violation is complete upon filing of a legal action in a prohibited location. It exists whether the consumer appears and wins the lawsuit, is coerced into settling because it is cheaper than defending in a distant forum, or defaults. The improper filing in a distant forum entitles the consumer to statutory damages.

Plaintiffs' state law claims also are complete on the improper filing of defendants' collection lawsuits, without regard to the outcome. The Indiana and Ohio consumer protection statutes (Counts IV and V) provide for statutory damages for unfair and unconscionable collection practices, which as set forth above includes the *filing* of collection lawsuits in a distant forum, regardless of outcome. The Illinois consumer protection statute (Count II) and the abuse of process claim (Count III) permit punitive damages for the same conduct. Such awards do not implicate Rooker-Feldman any more than the §1692i claim. Nor is there any Rooker-Feldman bar to a request for an order requiring that any future legal proceedings take place in a county where a student signed a contract or resides. Contrary to Def.Mem., p. 3, the state claims seek relief other than compensatory damages.

Certain types of compensatory damages are obviously independent of the judgment. For example, if a plaintiff incurs additional expense responding to postjudgment collection proceedings in a remote location, the increased expense is actual damages caused by the improper location, not the judgment.

Thus, defendants' argument is at best that Rooker-Feldman might preclude recovery of some (but not all) potential relief. This is not a ground for dismissing a complaint.

14

Furthermore, Rooker-Feldman does not apply where the federal plaintiff did not have a reasonable opportunity to raise the issue in the state court proceedings and the federal action does not directly seek to set aside a state judgment. *Brokaw v. Weaver,* 305 F.3d 660, 668 (7th Cir. 2002); *Long*, 182 F.3d at 558. While the Seventh Circuit has expressed "some question" whether the "reasonable opportunity" exception is still needed given *Exxon*'s narrowing of the doctrine, *Allen v. Irmco Mgmt. Co.*, 10-2790, 420 Fed. Appx. 597 (7th Cir. May 5, 2011), subsequent decisions hold that it still is in limited circumstances, and continue to recognize the exception. *Roberts v. Cendant Mortgage*, No. 1:11–cv–01438, 2013 WL 2467996, *3 (S.D.Ind., June 7, 2013); *Abrahamson v. Illinois Dept. of Finan. & Prof. Reg.*, 11 C 2038, 2012 WL 2814376, *2 (N.D.Ill., July 10, 2012); *Hartford Life Ins. Co. v. Solomon*, 910 F.Supp.2d 1075, 1079 (N.D.Ill. 2012).

This case illustrates why it is needed – the township small claims court has a practice of entering default judgments against hundreds of nonresidents without even colorable personal jurisdiction. A 2012 Report on the Marion County Small Claims Courts commissioned by the Indiana Supreme Court (Appendix D), found that debt collectors shopped cases to township small claims courts that provided favorable outcomes. (Report, ¶¶59-61) The Report specifically found that small claims judges who attempted to perform their duties conscientiously discovered that their caseloads dropped dramatically. (Report, ¶61).

The "reasonable opportunity" rule must be read together with the Supreme Court's consistent holding that a person sued without personal jurisdiction has a right to "ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, supra*, 456 U.S. at 706. In this case, 500+ consumers were deprived of a reasonable opportunity to raise ***any*** issue by a flawed system systematically entering default judgments without personal jurisdiction.

## VI. CONCLUSION

For the reasons stated above, defendants' motion to dismiss should be denied.

Respectfully submitted,

  s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

     I, Daniel A. Edelman, hereby certify that on September 11, 2013, I caused the foregoing document to be filed via the Court's CM/ECF system, which sent notice via email to the following:

David M. Schultz (dschultz@hinshawlaw.com)
Clifford E. Yuknis (cyucknis@hinshawlaw.com)
Katherine H. Tresley (ktresley@hinshawlaw.com)

                                            s/Daniel A. Edelman
                                            Daniel A. Edelman